HERMEZ MORENO, State Bar No. 72009
LAW OFFICES OF HERMEZ MORENO, PC
444 South Flower Street, 33rd Floor
Los Angeles, California 90071
Telephone: (213) 596-6000
Facsimile: (213) 596-6010
email: hmoreno@kbsslaw.com

RAYMOND P. BOUCHER, SBN 115364
KHORRAMI BOUCHER SUMNER & SANGUINETTI, LLP
444 South Flower Street, 33rd Floor
Los Angeles, CA 90071
Telephone: (213) 596-6000
Facsimile: (213) 596-6010
email: rboucher@kbsslaw.com

Attorneys for Plaintiff
Roy Galvan

FILED
2014 JAN 22 AM 11:45
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROY GALVAN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, LAPD OFFICERS MIGUEL TERRAZAS, DAVID NUNN, RICHARD ARCINIEGA AND DOE DEFENDANTS 1THROUGH 10, Inclusive,<br><br>Defendants. | Case No.: CV14-495 CAS (AJWx)<br><br>COMPLAINT FOR DAMAGES: CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. §§ 1983<br><br>1. False Arrest and Malicious Prosecution;<br>2. Failure to Intervene;<br>3. Monell Liability;<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, ROY GALVAN alleges as follows:

## I.
## INTRODUCTION

Through the intentional misconduct of defendants, LAPD Officers, Plaintiff was falsely arrested and prosecuted for a murder he did not commit. Defendants, with intent to pin a murder they did not properly investigate on Plaintiff, falsified police reports, falsified the statements of some witnesses, destroyed exculpatory evidence and suborned perjury of two homeless persons by paying them nearly $10,000 to wrongfully identify Plaintiff as the shooter.

Plaintiff was prosecuted based on the false evidence and reports of Defendant Officers and was forced to stand trial for murder. Plaintiff spent 13 hard months in L. A. County Jail from the date of his arrest awaiting trial. On April 20, 2012 he was found not guilty by a jury of his peers who were shown the misconduct of Defendant Police Officers.

Plaintiff therefore, brings this action seeking justice and redress for the violation of his rights secured by the Constitution and the laws of the United States.

## II.
## VENUE AND JURISDICTION

1. This action is brought pursuant 42 U.S.C. §§ 1983, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded on 29 U.S.C. §§1331 and 1343(1), (2), (3) and (4), and the aforementioned statutory and Constitutional provisions.

2. Venue is proper in the United States District Court for the Central District of California, Southern Division as the injury and claimed violation of rights occurred in the City of Los Angeles, California within the boundaries of the

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

Central District of this court.

## III.
## PARTIES

3. At all times relevant hereto, Plaintiff ROY GALVAN ("PLAINTIFF") was a resident of the County of Los Angeles, California.

4. At all times mentioned herein, defendant CITY OF LOS ANGELES ("CITY") was a governmental entity duly organized and existing under and by virtue of the laws of the state of California.

5. PLAINTIFF is ignorant of the true names and capacities of defendants sued herein as DOE Defendants 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. PLAINTIFF will amend this complaint to allege their true names and capacities when same shall have been ascertained. PLAINTIFF is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that PLAINTIFF's injuries as herein alleged were proximately caused by the acts and/or omissions of said fictitiously named defendants.

6. City of Los Angeles Police Officers, Defendants MIGUEL TERRAZAS ("TERRAZAS"), DAVID NUNN ("NUNN), RICHARD ARCINIEGA ("ARCINIEGA") and Defendant Does 1 through 5, inclusive ("DEFENDANT POLICE OFFICERS"), are and were at all times relevant hereto, officers, sergeants, captains, commanders, supervisors and/or civilian employees, agents, and representatives of the City of Los Angeles Police Department ('LAPD"), acting within their capacity as employees, agents and servants of Defendant CITY; and Defendant Does 6 through 10, inclusive, are and were at all times relevant hereto, officers, sergeants, captains, commanders, supervisors and/or civilian employees, agents, and said Defendants, at all times alleged herein, were acting within the course and scope of that employment and agency. Said

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

Defendants are sued individually and in their capacity as police officers, sergeants, captains, lieutenants, commanders, supervisors and/or other officers, employees, agents or representatives for the LAPD and the CITY, a department and subdivision of defendant CITY.

7. At all times relevant herein, DEFENDANT POLICE OFFICERS, and Defendant Does 6 through 10, inclusive, their supervisors, and various sergeants, lieutenants, captains, commanders, and others in supervisorial positions, were acting under color of law, under the color of the statutes, ordinances, regulations, policies, customs, practices, and usages of defendant CITY, its LAPD, and the State of California.

8. At all times relevant herein, PLAINTIFF is informed and believes and thereon alleges that Defendant Does 6 through 10 were captains, sergeants, lieutenants, commanders, and others in supervisorial positions, and/or chief policy makers for the CITY'S LAPD.

9. At all times relevant hereto, DEFENDANT POLICE OFFICERS employed organized, unlawful and illegal customs and practices of making false arrests, and intentionally causing emotional distress upon innocent victims. Said misconduct was known by, encouraged, tolerated and/or condoned by Defendant CITY.

## IV.

## FACTS COMMON TO ALL ACTIONS

10. On or about January 28, 2010, a Joey Gutierrez, a member of the Hang Out Boys (HOB") gang was shot and killed at the corner of 43rd and Main Street in Los Angeles by an unknown "tall" assailant who resembled a man who had been involved in an automobile accident at the intersection a few days later. The assailant's associate in the crime was a known gang affiliate. The assailant was seen running from the scene of the crime with no physical defect in his stride

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

or gait.

11. On February 8, 2011, a Mr. Ernesto Jurado, a witness to the shooting, was interviewed in Spanish by Dependants TERRAZAS and NUNN. Jurado lived at the apartment complex located at the corner where the shooting had occurred. He saw the shooting from his second story window. Jurado reported to Defendants that he saw the shooter running along the side of the building to the front of the courtyard, fire a number of shots and then run away eastbound down 43rd Street, Witness Jurado repeatedly told Defendants that he could not see the suspect shooter's face because it had been dark and he had only seen him from behind. Witness Jurado however, told Defendants that the shooter looked like a man that had been involved in a car accident at that same intersection, a few days before the shooting. This man was later identified by records as Inocente Hernandez.

12. Jurado also told Defendants that one of the people he had seen looked like an associate of a known gang member in the area, a certain "Flaco." Jurado gave Defendants detailed information as to where this Flaco could be found.

13. Jurado also alerted the defendants to the fact that he had seen two bicycles in the courtyard immediately after the shooting that had not been present just minutes before the shooting when he had arrived home.

14. These two bicycles were taken and booked into evidence the following day.

15. The bullet evidence was not properly collected. Multiple and different caliber bullet casings were collected about the shooting area but they were not marked with place cards as to where they had been found, they were handled without gloves and they were not booked for three days, losing the chain of custody. None matched the bullet found in the victim.

16. On February 28, 2011, Defendants interviewed Mark Loving, a homeless person who lived in a tent with another homeless person, Syrella Carpenter around the area where the shooting had occurred. Carpenter was a

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

paranoid schizophrenic. Defendants TERRAZAS and NUNN would repeatedly harass these two, physically abusing and sometimes handcuffing them. Defendants began threatening them, dragging them out of their tent, throwing them up against a wall asking them what they knew about the shooting. They took Loving to the police station on at least three occasions but only documented one of these times. In this interview, according to Defendant TERRAZAS, these two "witnesses" told him that PLAINTIFF had approached them saying that he knew who had shot the victim and quoted the witnesses as quoting PLAINTIFF saying, "We got him."

17. On March 1, 2011, the day following the February 28 interview of Loving, Defendants TERRAZAS and NUNN arrested PLAINTIFF at his home. They had no forensic nor eyewitness evidence tying PLAINTIFF the shooting.

18. PLAINTIFF denied any involvement whatsoever. He provided Defendants with an alibi, having been at home with his family, taking care of his child on the date and time of the shooting. More importantly, PLAINTIFF was suffering from a disability as he was still recovering from a severe wound to his right ankle and foot. On December 20, 2010, PLAINTIFF had suffered a calcaneus open fracture with an Achilles tendon rupture and detachment and right acute tarsal tunnel syndrome. On the day of his arrest, he was still unable to bear any weight on his foot and had not yet begun physical therapy. He was still on crutches and unable to wear a shoe. He could not even stand on the foot, let alone walk or run. No evidence of any kind tying PLAINTIFF to a gang, to gang activity or to the murder was ever found in his house or elsewhere.

19. The lack of evidence, the alibi and PLAINTIFF'S physical condition presented a severe blow to Defendants' desire to pin the murder on PLAINTIFF.

20. With Loving's frightened, vague and compelled information which tangentially tied PLAINTIFF to the shooting, DEFENDANT POLICE OFFICERS set out on a course of conduct to pin the murder of Joey Gutierrez on PLAINTIFF. As a result, DEFENDANT POLICE OFFICERS then engaged in constitutionally

violative, constitutionally impermissible and criminal conduct with the intent to make the arrest of PLAINTIFF stand. Among the violations committed by them were the following:

A. Because the then only known witness, Ernesto Jurado had already reported to Defendants that the shooter had been seen running away, Defendant TERRAZAS falsified his police report to include a paragraph stating that Jurado had called him back on February 14, 2011 to tell him that he had completely forgotten to mention that the shooter had run off "with a limp."

This call never occurred. Jurado's phone records show no such contact with TERRAZAS or any Defendant.

B. Defendants made sure that the two bicycles were destroyed before DNA and fingerprints could be taken from them. This was done before the Preliminary Hearing. No notice to the court or to PLAINTIFF'S defense counsel was ever provided and no report of the destruction or the reasons why was ever made. At the *Trombetta* hearing, TERRAZAS falsely testified he had gotten a call from someone saying there was an audit and since he had decided they were of no value, it was appropriate to destroy them. Records show there was no such audit.

C. On March 8, 2011, Defendants interviewed a Joel Cifuentes (aka "Termite"), a friend of decedent and a member of decedent's gang, the Hang Out Boys. While Cifuentes denied having been at the scene of the shooting, he described the shooter as a "tall" guy, with

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

the Moniker of "Creep." (PLAINTIFF is 5'3"). In his report, Defendant TERRAZAS falsely reported that Cifuentes had mentioned the shooter being a member of the 41st Street Gang known as "Insane" who had recently been shot in the foot.

The information provided by Cifuentes about the "tall" guy and "Creep" was omitted by TERRAZAS.

D. DEFENDANT POLICE OFFICERS knew that "Insane" was an active 41st Street gang member with a "41" tattooed on his face and a scar on his face. This was material *Brady* material but while concealing the FI cards and CalGangs info on "Insane" from PLAINTIFF and his defense attorney, DEFENDANT POLICE OFFICERS insisted instead that PLAINTIFF was "Insane."

E. DEFENDANT POLICE OFFICERS refused to investigate PLAINTIFF's alibi.

F. DEFENDANT POLICE OFFICERS failed to run the bullet that killed Gutierrez through NIBIIN. They never had the LAPD SID run any ballistics examination on it. As a result, they did not investigate to determine who had the gun that fired the bullet that killed Gutierrez.

G. Defendants intentionally improperly summarized the recorded interviews of Jurado, Cifuentes and other witnesses thus including and placing information in the record that was never said.

H. Defendants intentionally refused to investigate several possible suspects given to them:

1. Even though TERRAZAS had been told that

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

the shooter looked like a guy who had been in an auto accident a few days later at the same intersection (Inocente Hernandez), TERRAZAS not only refused to investigate the man but he also omitted from his report that he was aware of who Inocente Hernandez was;

2. Even though he was told the location of Flaco, the second person involved in the shooting, TERRAZAS never followed up on that information;

3. Even though he had been informed by Cifuentes of the names of the two persons ("Boxer" and "Shorty") who had taken the victim to the hospital (captured on surveillance video), dropped him off and ran away, TERRAZAS never investigated this;

4. DEFENDANT POLICE OFFICERS concealed their conduct in extracting information from the two homeless persons only after they had taken them to the police station and putting them in jail cells. Thereafter, to maintain their false stories and to secure their suborned perjurious testimony through the criminal trial, DEFENDANT POLICE OFFICERS paid these two witnesses nearly$10,000.

5. To secure false statements against

PLAINTIFF from Cifuentes and a Sergio Camacho (who had also seen Flaco running from the scene of the shooting) TERRAZAS promised them they would not get deported. Defendants also threatened Cifuentes with his brother's arrest for an outstanding rape warrant out of Oregon and subsequent placement in a facility where he would be raped or killed;

6. DEFENDANT POLICE OFFICERS offered false evidence and false reports to the District Attorney's office with the expectation a prosecution and conviction of PLAINTIFF would follow.

I. Nine months after the shooting, DEFENDANT POLICE OFFICERS became aware of a witness who had been arrested on another and unrelated matter. At that time, he told them he had information about the Gutierrez murder. He told them that a "Flaco" (the same moniker that Witness Jurado had told Defendants about back in January) had confessed to him being in a shootout with Gutierrez and other rival gang members and that Flaco expressed concern about having left the two bicycles behind at the scene. DEFENDANT POLICE OFFICERS never interviewed Flaco.

J. DEFENDANT TERRAZAS offered false evidence and perjurious testimony at trial.

21. This was not the first time Defendant TERRAZAS had falsely

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

accused someone of murder. Then LAPD Chief Parks was notified of this fact.

22. The evidence and police reports presented by DEFENDANT POLICE OFFICERS to the L.A. District Attorney's Office were intentionally designed to mislead the prosecutor's office and instead, to rely on their ostensible credibility to file a murder charge against PLAINTIFF with a gang enhancement allegation. As a result, the D.A. relied solely on the reports to file murder charges and to prosecute PLAINTIFF.

23. Plaintiff's life and freedom were thus placed in severe jeopardy by the wrongful conduct of DEFENDANT POLICE OFFICERS. If convicted as charged, PLAINTIFF faced a mandatory life sentence in prison.

24. On April 20, 2012, after being falsely incarcerated for more than a year, PLAINTIFF was fully and totally acquitted by a jury after less than three hours of deliberation.

25. PLAINTIFF has been required to hire attorneys to vindicate his rights and is entitled to attorney's fees pursuant to 42 U.S.C. Section 1988.

**V.**

**FIRST CAUSE OF ACTION**

**VIOLATION OF CIVIL RIGHTS (42 USC SEC. 1983)(As Against DEFENDANTS LAPD OFFICERS MIGUEL TERRAZAS, DAVID NUNN, RICHARD ARCINIEGA AND DOE DEFENDANTS 1THROUGH 5 )**

26. PLAINTIFF repeats and realleges each and every allegation of paragraphs 1 through 25 above as though fully set forth herein.

27. This action is brought pursuant to 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments of the United States Constitution.

28. PLAINTIFF was deprived of rights, privileges and immunities secured to him by the Constitution of the United States and the law enacted there-

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

under when said Defendants acting under the color of law, arrested PLAINTIFF without probable cause, tampered with evidence, falsified reports, destroyed evidence, suborned perjury, fabricated and manufactured evidence, ignored and concealed exculpatory evidence, made false statements about the evidence in their possession, engaged in improper coercion of witnesses, thus causing PLAINTIFF's arrest, incarceration and prosecution, possessed the right, guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

29. At all times herein, PLAINTIFF had and has a Constitutional right of due process, and a right to a fair trial and freedom from wrongful incarceration.

30. Therefore, Defendants are liable to PLAINTIFF under 42 U.S.C. §1983.

31. DEFENDANT POLICE OFFICERS and DOES 1-5, in acting as alleged subjected PLAINTIFF to the aforementioned deprivations by either actual malice, deliberate indifference or a reckless disregard of his rights under the U.S. Constitution.

32. In acting as alleged herein, Defendants and each of them, caused PLAINTIFF severe physical and emotional injuries, as well as other damages, all in amounts to be determined at the time of trial. As a further direct and proximate result of said injuries, PLAINTIFF suffered loss of earnings and loss of earning capacity in amounts to be proven at trial

33. The acts of DEFENDANTS LAPD OFFICERS MIGUEL TERRAZAS, DAVID NUNN, RICHARD ARCINIEGA AND DOE DEFENDANTS 1THROUGH 5 were willful, wanton, malicious, and oppressive thereby justifying the awarding of exemplary and punitive damages as to said individual defendants.

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

## VI.

## SECOND CAUSE OF ACTION

## FAILURE TO INTERVENE TO PREVENT CIVIL RIGHTS VIOLATION

**( As Against Defendants DAVID NUNN, RICHARD ARCINIEGA AND DOE DEFENDANTS 1THROUGH 5)**

34. PLAINTIFF incorporates paragraphs 1 through 25 and 27 through 30 by this reference as though fully set forth herein.

35. From the documentary evidence and evidence abduced during PLAINTIFF's defense of the false charges, Defendant TERRAZAS was the primary mover in the misconduct alleged above.

36. At all times relevant herein during all the acts, conduct, failures and omissions relevant to that misconduct, the arrest and prosecution, Defendants DAVID NUNN, RICHARD ARCINIEGA AND DOE DEFENDANTS 1THROUGH 5 were present at the times and places alleged and/or were aware of PLAINTIFF'S plight at the hands of Defendant TERRAZAS and were charged with the Constitutional duties to protect PLAINTIFF from such abuse and misconduct and charged with the duty to not knowingly nor with wanton disregard, allow, permit or fail to intervene in the unjustified, unwarranted, illegal and false charges to which a person was being subjected and thus they were charged with the Constitutional duties to protect PLAINTIFF from such abuse and misconduct and charged with the duty to not knowingly nor with wanton disregard, allow, permit or fail to intervene in the unjustified, unwarranted, illegal and false charges to which he was subjected at the hands of Defendant TERRAZAS.

37. On said dates, times and locations as alleged above, each said Defendant was in the position and authority to lawfully intervene in and prevent the unjustified and unwarranted conduct toward PLAINTIFF which ultimately led to his injuries and/or damages.

38. On said dates, times and locations as alleged above, each said Defendant had ample and reasonably sufficient time and opportunity to so intervene and prevent the wrongful conduct of the other officers including Defendant TERRAZAS, to prevent the injuries and damages and to timely intercede so PLAINTIFF's rights would not be so violated and was compelled to do so as a Police Officer under the laws of the State of California and under the Constitution of the United States of America.

39. On said dates, times and locations as alleged above, in deliberate indifference to the life, rights, safety and welfare of PLAINTIFF each said Defendant intentionally and with deliberate indifference to the civil rights of PLAINTIFF, refrained from intervening in the acts leading to his injuries and thereafter refrained from intervening so that PLAINTIFF would not be falsely arrested and falsely charged with and prosecuted for crimes he never committed.

40. As a result thereof, PLAINTIFF was unjustifiably, purposely, recklessly and wantonly, and with deliberate indifference, exposed to the injuries and damages and harm by said Defendants as alleged in the First Cause of action in violation of his rights under the Fourth, and Fourteenth Amendments of the Constitution of the United States of America.

41. The acts and omissions constituting this cause of action were purposeful, malicious, and reckless and wanton so as to justify the imposition of punitive damages on these individual Defendants in their respective individual capacity.

## VII.

## THIRD CAUSE OF ACTION

**(*Monell* Claim under 42 U.S.C. Section 1983)**

**(As Against DEFENDANT CITY OF LOS ANGELES )**

42. Except as to the punitive damages allegations, Plaintiff repeats and

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

realleges each and every allegation of paragraphs 1 through 25 and 27 through 33 and 38 through 43 above as though fully set forth herein.

43. At all times relevant herein, DOE Defendants 6 through 10, inclusive were supervisors and/or policy makers for the CITY OF LOS ANGELES Police Department which, through gross negligence and in indifference to the Constitutional rights of citizens, employed, maintained and permitted an official policy and custom of permitting, allowing, ratifying and condoning the occurrence of the types of wrongs and misconducts set forth herein. Said misconduct was encouraged, tolerated and condoned by said defendants.

44. On the date of Plaintiff's arrest indicated above, POLICE OFFICER DEFENDANTS, acting within the course and scope of their duties as peace officers of the CITY OF LOS ANGELES, deprived PLAINTIFF of his rights to be free from unreasonable seizures and unlawful arrests as delineated herein above, and thereafter in violation of PLAINTIFF'S due process rights proceeded to falsify, fabricate, conceal and alter evidence, submit a false police reports, coerce and intimidate witnesses and so that PLAINTIFF would be found guilty of the false charges.

45. Said policies, procedures, customs and practices also called for the CITY OF LOS ANGELES and its Police Department not to discipline, prosecute, or objectively and/or independently investigate or in any other way, deal with or respond to known incidents and complaints of false arrests, falsification of evidence, the preparation of false police reports to justify such wrongful conduct, to cover-up and conceal such wrongful conduct by LAPD and for the CITY OF LOS ANGELES to fail to objectively and/or independently investigate or in any other way, deal with or respond to or the related claims and lawsuits made as a result of such false arrests and related misconduct.

46. Said policies, procedures, customs and practices called for and led to the refusal of said Defendant CITY to investigate complaints of previous incidents

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

of false and unlawful arrests, the filing of false police reports to conceal such misconduct, the falsification evidence and perjury and, instead, officially claim that such incidents were justified and proper.

47. Said policies, procedures, customs and practices called for said Defendants, by means of inaction and coverup, to encourage an atmosphere of lawlessness within the LAPD and to encourage their police officers to believe that improper arrest of residents of the Los Angeles County or persons present therein, including members of minority groups, the planting of evidence, the submission of false police reports, and the commission of perjury was permissible and to believe that unlawful acts of falsification of evidence and perjury would be overlooked without discipline or other official ramifications.

48. Said policies, procedures, customs and practices of said Defendant CITY has evidenced a deliberate indifference to the violations of the constitutional rights of PLAINTIFF. This indifference was manifested by the failure to change, correct, revoke, or rescind said policies, procedures, customs and practices in light of prior knowledge by said Defendants and their subordinate policymakers of indistinguishably similar incidents of unjustified and unreasonable and unlawful arrests, falsification of evidence, evidence tampering, submission of false police reports and perjury.

49. Deliberate indifference to the civil rights of minority groups and other victims of the CITY's LAPD unlawful arrests, falsified evidence, false and misleading police reports and false and perjurious testimony was also evidenced by said Defendants by their ignoring of the history and pattern of prior civil lawsuits alleging civil rights violations, similar to those alleged herein, arising from such misconduct and the related payment of judgments to such individuals.

50. PLAINTIFF is informed and believes and therein alleges that these customs and practices and policies were the moving force behind the violations of PLAINTIFF'S rights. Based upon the principles set forth in *Monell v. New York*



KBSS

*Dept. Of Social Services*, the CITY OF LOS ANGELES is liable for all of the injuries and damages sustained by PLAINTIFF as set forth above.

**VIII.**

**PRAYER**

WHEREFORE, PLAINTIFF prays for judgment against Defendants and each of them as follows:

a) Past, present and future compensatory general and special damages in amounts according to proof;

b) Exemplary damages, ONLY as against each INDIVIDUAL police officer, supervisory, and policy maker defendant - as spelled out in each cause of action, in an amount sufficient to deter and to make an example of each said individual defendant;

c) Reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. §1988;

d) Costs of the suit necessarily incurred herein; and

e) Such further relief as the Court may deem just or proper.

Dated: January 16, 2014

LAW OFFICES OF HERMEZ MORENO, PC;

KHORRAMI BOUCHER
SUMNER & SANGUINETI, LLP

By: /s/ Hermez Moreno

Hermez Moreno
Attorneys for Plaintiff

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Phone: (213) 596-6000
Fax: (213) 596-6010

**DEMAND FOR JURY TRIAL**

PLAINTIFF, ROY GALVAN, respectfully demands that the present matter be set for a jury trial.

Dated: January 16, 2014

LAW OFFICES OF HERMEZ MORENO, PC;

KHORRAMI BOUCHER
SUMNER & SANGUINETI, LLP

By: /s/ Hermez Moreno

Hermez Moreno
Attorneys for Plaintiff