UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**               'O'

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|---|---|---|---|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:           Attorneys Present for Defendants:

Brian Bush                          Ty Ford
                                    Surekha Pessis

**Proceedings:**     MOTIONS *IN LIMINE* (Filed 06/20/2016)[69][71][73][75][77]
[79][81][86][87][88][89]

## I.     INTRODUCTION & BACKGROUND

On March 3, 2011, Roy Galvan was charged with the shooting murder of Joey
Gutierrez.  Following a 2012 jury trial, Galvan was acquitted of all charges.  On January
22, 2014, Galvan filed the instant suit against the City of Los Angeles, Los Angeles
Police Department ("LAPD") Officer David Nunn, LAPD Detective Miguel Terrazas,
Richard Arciniega, and various fictitious defendants, alleging numerous civil rights
violations pursuant to 42 U.S.C. § 1983.[1]  Among other things, plaintiff alleges in the
operative complaint that defendants lacked probable cause for his arrest, and that
defendants fabricated and failed to disclose key pieces of evidence, leading to his
wrongful arrest and malicious prosecution.

### A.     Factual Background

This action stems from the investigation of the shooting murder of Joey Gutierrez,
which occurred on January 28, 2011, at the intersection of 43rd Street and Main Street in
the City of Los Angeles.  Gutierrez was a member of the Hang Out Boys ("HOBs") street
gang.  Detective Terrazas and Officer Nunn were assigned by LAPD to the murder
investigation.  Terrazas interrogated more than thirty murder suspects, and Nunn

---

[1] On July 14, 2015 the parties stipulated to dismiss defendant Arciniega; the Court
approved the parties' stipulation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|---|---|---|---|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

interviewed approximately fifty murder suspects.  Many of the factual disputes in this case arise from several interviews that Terrazas and Nunn conducted.

First, on February 8, 2011, Terrazas interviewed eyewitness Ernesto Jurado, who could not identify the murder suspect but provided a general description of an individual who fled the scene of the shooting.  Jurado further stated at least thirteen times over the course of the interview that the shooter "ran" after firing the gunshots.  Months before the murder, on December 20, 2010, plaintiff Galvan had suffered an injury to his right ankle, which left him with a severed and detached Achilles tendon and an open fracture to his heel bone, and which required extensive surgical intervention to repair.  Galvan was unable to bear weight on that heel for more than five months.  As is particularly relevant here, LAPD's "Murder Book Chronology" for the Gutierrez investigation contains the following entry:

> On February 14, 2011, Witness Jurado phoned Terrazas and stated that he had forgotten to mention that when suspect-1 had run from the location after the shooting [*sic*] had a very noticeable limp when he ran eastbound.  Jurado said it appeared the suspect had possibly been shot in the leg during the altercation.

The entry is listed as an edit to the February 8, 2011 chronological entry regarding Jurado's initial interview, and not as a separate entry in the chronological record; as such, it is not apparent from the record when the entry was made.  Galvan argues this entry was fabricated, citing to Jurado's phone subscriber records, which do not indicate that any phone calls were made to or from Terrazas on February 14th.  Defendants concede that no phone call took place on February 14th, but contest plaintiff's assertion that the entry was fabricated, insisting instead that the record reflects that a phone call that took place on February 13th, 2011.

Second, Terrazas interviewed Joel Cifuentes, who was not present at the time of the murder but related information he had heard from another individual, Robert Flores.  The Statement Form documenting the Cifuentes interview states that Flores told Cifuentes that one of the suspects who fired a gun at Gutierrez was a gang member named "Insane" and had been shot in the foot.  Plaintiff Galvan contends that the portion of the Statement Form that refers to "Insane" was fabricated, as this moniker does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
| --- | --- | --- | --- |
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

appear in the interview transcript, nor does it appear in Terrazas's handwritten notes taken at the interview.

Third, on February 28, 2011, Mark Loving was interviewed. At the time of the interview, Loving lived with his girlfriend, Syrella Carpenter, in an alley three doors down from Galvan. Loving was first approached by Nunn, Terrazas, and two other LAPD detectives in the alley about a week after Gutierrez was killed, but Loving did not provide the officers with any information at that time. Over the course of the next few weeks, Loving was handcuffed and thrown against a fence, taken to the station for questioning three times, and again handcuffed and thrown against a fence. Ultimately, Loving agreed to have his statement taken on February 28, 2011. During a recorded interview, Loving stated that Galvan admitted that Gutierrez had shot him in the foot on a prior occasion and that Galvan had shot and killed Gutierrez in retaliation for shooting him. Loving selected Galvan's photograph from a six-pack of photographs. The recorded statement and reports relating to Loving's statement were turned over to the prosecution.

On March 3, 2011, plaintiff Galvan was arrested. At the time, he could only ambulate with crutches and could only hop without them. On March 8, 2011, Terrazas and Nunn interviewed Mark Loving's girlfriend, Syrella Carpenter. Weeks before, Carpenter had refused to give a statement; in the intervening time, Carpenter's General Relief benefits were cut off, which she believes occurred because she "would not complain against" Galvan. Carpenter identified Gutierrez as the murder victim from a six-pack, as well as plaintiff (from a different six pack) as the person who admitted to killing Gutierrez.

A preliminary hearing in the murder cases against Galvan was held in June 2011. Ultimately, Galvan was acquitted of all charges following a jury trial in April 2012.

**B.     The Court's Summary Judgment Order**

Galvan's complaint in the instant suit alleges various civil rights violations pursuant to 42 U.S.C. § 1983, including (1) unlawful arrest; (2) failure to intervene (against Officer Nunn only); (3) deliberate fabrication of evidence; (4) malicious prosecution; (5) failure to disclose exculpatory evidence (i.e., <u>Brady</u> violations); and (6) <u>Monell</u> liability. In an order dated March 1, 2016, the Court granted in part and denied in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|---|---|---|---|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

part defendants' motion for summary judgment.  Specifically, the Court granted defendants' motion for summary judgment as to plaintiff's claims for deliberate fabrication of evidence; malicious prosecution;[2] and failure to disclose exculpatory evidence (i.e., <u>Brady</u> violations).[3]

_____

[2] In granting summary judgment for defendants as to plaintiff's malicious prosecution claim, the Court concluded as follows:

> It is entirely unclear from the summary judgment record what evidence the district attorney relied upon in seeking to prosecute Galvan, and hence the court cannot decide that the district attorney relied exclusively, or even in substantial part, on the Jurado follow-up phone call or the Cifuentes transcript.

> ***

> For that reason, the court cannot conclude that the District Attorney's decision to prosecute was "based almost entirely on the police investigation [and reporting] [that reasonably could be] adjudged to be deficient by the jury."  <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1027 (9th Cir. 2008).  Thus, although there is a triable issue as to whether defendants provided false information to the District Attorney because there is no evidence that the District Attorney relied on the Jurado or Cifuentes reports in electing to prosecute, summary judgment on this claim in defendants' favor is warranted.

Dkt. 68, at 24-25 (alterations in original).

[3] In granting summary judgment for defendants as to plaintiff's <u>Brady</u> claim, the Court found that "Galvan's <u>Brady</u> claim must be dismissed as a matter of law because Galvan was acquitted and cannot prove that further exculpatory evidence, such as that which was allegedly concealed, would have changed the outcome of his case."  Dkt. 68, at 29.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          '**O**'

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
| --- | --- | --- | --- |
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

The Court denied defendants' motion for summary judgment with respect to (1) plaintiff's unlawful arrest claims against Officers Nunn and Terrazas; (2) plaintiff's failure to intervene claim against Officer Nunn; and (3) plaintiff's <u>Monell</u> claims against the City.

Specifically, in denying defendants' motion for summary judgment as to plaintiff's unlawful arrest claim, the Court concluded as follows:

> Taking Galvan's version of the disputed facts as true – that defendants continued to pursue and arrest Galvan based on testimony that had been coerced from a vulnerable, unreliable witness, despite of additional evidence that rendered that witness's testimony unlikely if not impossible – a reasonable jury could conclude that defendants did not have probable cause to arrest Galvan, in violation of Galvan's clearly established right to be free from arrest without probable cause. <u>Kennedy v. Los Angeles Police Dep't</u>, 887 F.2d 920, 924 (9th Cir. 1989) ("It is clearly established, of course, that an arrest without probable cause violates the Constitution"). Defendants' motion for summary judgment is denied with regard to Galvan's unlawful arrest claim.

Dkt. 68, at 21.

Plaintiff's failure to intervene claim is asserted against Officer Nunn only and is premised on the theory that because Nunn investigated the murder alongside Terrazas and was present during key witness interviews, Nunn had the opportunity to prohibit Terrazas from fabricating evidence that falsely implicated plaintiff, but failed to intervene by preventing the allegedly unlawful arrest. In denying defendants motion for summary judgment as to this claim, the Court held that "a reasonable juror could conclude that if Terrazas did not have enough information to reasonably believe Galvan had committed a crime, Nunn did not have enough information either and should have stopped the arrest or prosecution from taking place." Dkt. 68, at 31.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | | Date | August 1, 2016 |
|---|---|---|---|---|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | | |

Galvan's <u>Monell</u> claim against the City is based upon his contention that his alleged false arrest and malicious prosecution were caused by the City's unconstitutional policies, practices, or customs. <u>See</u> Dkt. 68, at 32-34. Specifically, Galvan contends that the City failed to reprimand the officer defendants for alleged unconstitutional activities on three occasions demonstrates a widespread practice or deliberate policy choice by a policy-making official. <u>Id.</u> at 33. Galvan cites to three incidents: (1) a 2000 lawsuit, in which the Nunn and Terrazas were named as defendants; (2) a letter from the Los Angeles County Public Defender's office to the LAPD, reporting a separate instance of alleged misconduct by Terrazas; and (3) the fact that defendants have not been reprimanded for the alleged misconduct occurring in the present case. <u>Id.</u>

In denying summary judgment as to plaintiff's <u>Monell</u> claim, the Court concluded as follows:

> Although it is possible that none of these three incidents is sufficient to establish a municipal policy or custom in isolation, taken together the incidents potentially paint a different picture. Upon viewing the evidence presented a jury could reasonably conclude that there had been a pattern of accusations regarding the misconduct of these particular defendants that the City failed to address. The fact that the 2000 lawsuit was settled rather than dismissed, and the fact that the 2001 letter came from the County Public Defender's office, both reasonably indicate that these complaints were at the very least nonfrivolous and potentially warranting further municipal internal investigation. Further, although Galvan has not yet demonstrated defendants' guilt in this case, defendants' coercive interview techniques were presented during the criminal trial, and many witnesses denied defendants' recorded version of events, giving rise to an inference that evidence had been fabricated. Thus, a reasonable jury could conclude that the City should have engaged in some further investigation with regard to the defendants' tactics in the underlying criminal case, even if Galvan had not filed the present civil action.

Dkt. 68, at 33-34.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|----------|--------------------------|------|----------------|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

## II.  MOTIONS *IN LIMINE*

### A.  Defendants' Motions *in Limine* ("MIL")

#### 1.  Defendants' MIL No. 1 to Trifurcate the Determination of Individual Liability from Compensatory Damages/<u>Monell</u> and Punitive Damages

Federal Rule of Civil Procedure 42(b) states that "[f]or convenience, [in order] to avoid prejudice, or [in order] to expedite and economize, the court may order a separate trial of one or more separate issues . . . ."  Fed. R. Civ. P. 42(b).  Pursuant to Rule 42, defendants first move for an order trifurcating the trial into three phases, such that (1) the first phase will involve liability of the individual defendants, Terrazas and Nunn; (2) the second phase will involve both the determination of <u>Monell</u> liability and plaintiff's compensatory damages; and (3) the third phase, if necessary, will involve trying the amount of punitive damages.  Plaintiff argues that trifurcation of the case will unfairly prejudice plaintiff's case, will be impracticable, and will run contrary to the policies of judicial economy.  Plaintiff has agreed, however, to bifurcate the issue of punitive damages.

The Court **GRANTS** in part, and **DENIES** in part defendants' motion to trifurcate the trial.  Specifically, the Court concludes that the trial should be trifurcated as follows: (1) the first phase will involve liability of the individual defendants, Terrazas and Nunn, as well as plaintiff's compensatory damages; (2) the second phase will involve determination of <u>Monell</u> liability; and (3) the third phase, if necessary, will involve trying the amount of punitive damages as to the individual defendants.[4]

---

[4]  The Court notes that "[a]lthough a municipality may be liable for compensatory damages in § 1983 actions, it is immune from punitive damages under the statute." <u>Mitchell v. Dupnik</u>, 75 F.3d 517, 527 (9th Cir. 1996) (citing <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981)); <u>see also id.</u> (noting that a "suit against a governmental officer *in his official capacity* is equivalent to a suit against the governmental entity itself," and therefore the district court erred in awarding punitive damages against various correction officer-defendants *in their official capacities*, as any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|----------|-------------------------|------|----------------|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

> **2.      Defendants' MIL No. 2 to Exclude Evidence or References to the
> Defendant and Non-Defendant Officers' Personnel History and
> Prior Lawsuits**

In 2011, LAPD conducted the first of two related Internal Affairs ("IA") investigations regarding plaintiff's March 1, 2011 arrest for the murder of Joey Gutierrez. The second of these investigations was generated in 2014, years after the murder. Defendants have produced both investigations in discovery.  Defendants also produced one unrelated Internal Affairs investigation which was generated in 2008.  Defendants contend that all three investigations are hearsay and are not probative of the issues to be litigated in the first phase of the trial (plaintiff's unlawful arrest and failure to intervene claims).

Accordingly, in their second motion *in limine*, defendants move to exclude (1) evidence of the two Internal Affairs investigations conducted by the LAPD in relation to plaintiff's arrest on March 1, 2011; (2) evidence of unrelated Internal Affairs investigations conducted by the LAPD involving any current, former, or retired officer who testifies at trial, including the defendant officers; and (3) evidence of "other claims, lawsuits, or scandals."  Defendants argue that such evidence is irrelevant and unfairly prejudicial, and should therefore be excluded pursuant to Federal Rules of Evidence 403, 404(b), 406, and 608(b).

Plaintiff avers that he does not intend to proffer evidence relating to the IA investigations to prove that defendants arrested him without probable cause or otherwise violated his constitutional rights.  However, plaintiff argues that such evidence is relevant to plaintiff's <u>Monell</u> claim, as it is probative of (a) the City's notice of defendant Terrazas' alleged misconduct in the past, (b) the City's opportunity to investigate and to take remedial steps, and © the City's  purported failure to do so.  More specifically, plaintiff avers that such evidence "will have a tendency . . . to make the existence of [d]efendant City's apparent custom after being placed on express notice, of allowing, ratifying, condoning and permitting without discipline, the wrongful conduct of

such award "is in reality an assessment against the county, which is immune from such damages") (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|---|---|---|---|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

[d]efendants like [officers] Terrazas and Nunn." Dkt. 95, at 5. Separately, plaintiff also contends that certain evidence from a particular IA investigation from 2000, as well as a lawsuit and subsequent settlement in 2000, involving defendant Terrazas concern Terrazas's character for truthfulness. Specifically, plaintiff cites to an August 23, 2001 letter from the Public Defender's Office stating that Terrazas "prepared a misleading report" and proceeded to "perpetuate[] [the] misleading report in sworn testimony at the trial." Id. Plaintiff further avers that a January 4, 2000 incident, which purportedly resulted in a $275,000 settlement, "arose from an unlawful arrest based on deliberately fabricated charges." Dkt. 95, at 6. Accordingly, plaintiff contends that pursuant to Federal Rule of Evidence 608(b), such "prior conduct is probative of a witness' character for truthfulness or untruthfulness, and more importantly, on issues strikingly similar to those in which he engage here." Id. Therefore, plaintiff asserts that he should be permitted to cross-examine defendants on such matters.

As plaintiff appears to concede, evidence of prior investigations, including any IA investigations related to plaintiff's March 2011 arrest, are irrelevant and may cause unfair prejudice during the individual liability phase of the trial. Accordingly, evidence of any such investigations is inadmissible during the first phase of the trial, but perhaps relevant during the Monell phase, as explained *supra*.

Accordingly, plaintiff's motion is **GRANTED** in part and **DENIED** in part; specifically, the motion is granted as to the first phase of the trial and denied without prejudice as to the second and third phases of the trial.

### 3.    Defendants' MIL No. 3 to Preclude Evidence of the Criminal Action and to Preclude Plaintiff Claiming he is "Innocent"

In their third motion *in limine*, defendants argue that because the Court has granted summary judgment in defendants' favor on plaintiff's malicious prosecution and Brady claims, the jurors should not hear evidence indicating that any criminal case was ever filed against plaintiff or that plaintiff was ultimately acquitted of Joey Gutierrez's murder. Defendants contend that during the first phase of the trial, the jury will instead be tasked with determining whether the defendant officers' decision to arrest plaintiff on March 1, 2011 was reasonable based on the totality of the circumstances, as well as whether defendant Nunn failed to intervene by preventing the purportedly unlawful arrest.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|---|---|---|---|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

Accordingly, pursuant to Federal Rules of Evidence 402 and 403, defendants seek an order directing plaintiff's counsel (1) not to convey to the jury any information regarding the filing or resolution of the related criminal proceedings against plaintiff; and (2) not to mention, refer to, interrogate concerning, nor to convey to the jury any suggestion, claim, or testimony that plaintiff and his witnesses contend plaintiff is "innocent."

In his opposition, plaintiff argues that the criminal proceedings, "and more importantly, [d]efendants' perpetual fraudulent misconduct throughout the proceedings as well as [p]laintiff's acquittal[,] are highly relevant to [p]laintiff's <u>Monell</u> claim" and should therefore be admitted at trial. Plaintiff states that he does not intend to introduce the acquittal as proof that he was falsely arrested, but rather "intends to introduce the criminal proceedings and acquittal to prove that [the City] maintained a pattern and practice of conduct which gave rise to the violations." <u>See</u> Dkt. 96.

As the Court explained in its summary judgment order, "given the history of complaints against defendants and the City's apparent inaction in response," there is "at least a triable issue of fact with regard to whether the City had a policy of implicitly approving of or at least failing to sufficiently train regarding constitutional violations." Dkt. 68, at 33 (noting that "a reasonable jury could conclude that the City should have engaged in some further investigation with regard to the defendants' tactics in the underlying criminal case, even if Galvan had not filed the present civil action").

In light of this finding by the Court, plaintiff argues that he should be permitted, in support of his <u>Monell</u> claim, to present evidence of instances from plaintiff's preliminary hearing and criminal trial wherein defendants' misconduct purportedly became known to the City. For example, plaintiff avers that defendant Terrazas perjured testimony indicating that Jurado had called him on February 14, 2014 to tell him that he had "forgotten to mention" that the suspect he had seen running actually had run with a "noticeable limp," and that "it appeared the suspect had possibly been shot in the leg during the altercation." Plaintiff notes that when Jurado testified at the criminal trial, he denied ever having called Terrazas on the 14th and denied ever having told Terrazas that the suspect had limped or been shot.

The Court agrees that at least some of the evidence related to plaintiff's criminal trial may be relevant to establishing <u>Monell</u> liability, based upon the various theories

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|----------|-------------------------|------|----------------|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

articulated above.  Furthermore, the Court finds that—as defendants argue and plaintiff appears to concede—evidence of plaintiff's criminal prosecution and ultimate acquittal is irrelevant to the first phase of the trial regarding the officers' individual liability for unlawful arrest and failure to intervene.[5]

Accordingly, the Court **GRANTS** in part and **DENIES** in part defendants' motion to preclude evidence of plaintiff's criminal trial and ultimate acquittal.  Specifically, defendants' motion is granted as to the liability phase of the trial, and denied as to the subsequent phases of the trial.[6]

---

[5]  However, to the extent defendants also seek to preclude plaintiff from presenting any evidence regarding his proclaimed innocence, defendants' motion must be denied.  Certain evidence regarding plaintiff's professed innocence may be relevant to the officers' determination of probable cause in arresting plaintiff; accordingly, to the extent defendants seek to preclude any such evidence, the motion is denied without prejudice to renewal at trial.

[6]  In his Contentions of Fact and Law, dkt. 109, plaintiff states that he "will actively seek during or prior to trial[] the Court's reconsideration of its interlocutory Order granting Defendants' motion for summary judgment on [plaintiff's malicious prosecution claim]."  Dkt. 109, at 9 n.3.  In plaintiff's view, "[t]he Court's rejection of this claim, while at the same time allowing issues of fact concerning [d]efendants' fabrication of reports that were submitted to the prosecutor to go to the jury, have made preparation of this trial untenable."  Id.

The Court does not reconsider its order granting summary judgment here.  However, to the extent the Court later reconsiders its order granting summary judgment and reverses it order granting summary judgment for defendants as to plaintiff's malicious prosecution claim, the Court will permit plaintiff to introduce evidence during the liability phase of the trial regarding both the fact that he was charged for the Gutierrez murder and the fact that he was ultimately acquitted.  The Court notes, however, that any such reconsideration and reversal of the Court's summary judgment order in this regard will have no effect on the Court's ruling on defendants' sixth motion *in limine* to preclude the testimony of Deputy Public Defender Ania Haigwood.  Ms. Haigwood's testimony is inadmissible, irrespective of whether or not the Court grants summary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

**4.    Defendants' MIL No. 4 to Preclude the Testimony of Plaintiff's Non-Retained Medical Expert, as well as Documentary Evidence of Medical Treatment**

In their fourth motion *in limine*, defendants move to preclude, *inter alia*, (1) evidence regarding medical treatment plaintiff has received, including the surgery he underwent for a gunshot wound suffered on December 20, 2010; (2) testimony from any medical expert concerning plaintiff's physical and emotional injuries and treatment; (3) testimony from any medical expert concerning the physical abilities and/or limitations caused by the December 20, 2010 incident; (4) evidence regarding medical records that support plaintiff's injury claims; (5) and testimony from plaintiff himself regarding his physical condition at or around the time of the murder.  By way of background, Gary Chen, M.D., a surgeon, testified as a medical expert on plaintiff's behalf during plaintiff's 2012 criminal trial.  Dr. Chen was the physician who performed surgery on plaintiff's foot following the December 20, 2010 incident wherein plaintiff was shot at the same intersection where Gutierrez would later be murdered.  Dr. Chen testified that plaintiff's December 2010 injury would have precluded him from running at the time of the January 28, 2011 murder.

In the instant suit, plaintiff has disclosed Dr. Chen as a "non-retained" expert, such that plaintiff has not provided a Rule 26 report for Dr. Chen.  Defendants accordingly argue in their motion that treating Dr. Chen as a "non-retained" expert is improper and that Dr. Chen's testimony should be excluded pursuant to Federal Rules of Civil Procedure 26(a)(2)(A) and 37.  Under Federal Rule of Civil Procedure 26(a)(2)(A), a party must disclose to the other parties the identity of any witnesses it intends to call at trial to present expert testimony under Federal Rules of Evidence 702, 703, or 705.  Fed. R. Civ. P. 26(a).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, *or at a trial*, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1) (emphasis added).

---

judgment in defendants' favor on plaintiff's malicious prosecution claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|---|---|---|---|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

However, plaintiff intends "only to offer [Dr. Chen's] testimony based on the direct observations and experiences of the treating physician formed during years of providing care to [p]laintiff." Dkt. 97, at 5. Dr. Chen treated Plaintiff on February 8, 2011, approximately six or seven weeks after the initial surgery, and only eleven days after Gutierrez's murder. Id. at 6-7. Dr. Chen is expected to testify that when he saw plaintiff on February 8, 2011, plaintiff was permitted to put only up to 25 percent of his weight on the injured foot, which had not yet fully healed and showed signs of necrosis. Id.

The Court concludes that as plaintiff's treating physician, Dr. Chen has personal knowledge relevant to, among other things, plaintiff's physical condition in and around the time of the murder. As plaintiff rightly notes, Dr. Chen's testimony regarding whether plaintiff could bear weight on his foot is relevant to the totality of the circumstances upon which the defendant officers made their determination of probable cause for arrest. Thus, Dr. Chen's testimony is both highly relevant to the material disputes regarding plaintiff's wrongful arrest claim, and is also exempt from the disclosure requirements of Rule 26(a), because his opinions were formed during the course of treatment. See also Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011) (noting that a treating physician is exempt from the disclosure requirements of rule 26(a) where "his opinions were formed during the course of treatment."); Mohney v. U.S. Hockey, Inc., 300 F. Supp. 2d 556, 560 (N.D. Ohio 2004) ("Courts consistently have found that treating physicians are not expert witnesses merely by virtue of their expertise in the respective fields. Only if their testimony is based on outside knowledge, not on personal knowledge of the patient and his or her treatment, may they be deemed experts.").

Accordingly, while plaintiff may not present expert testimony from witnesses that were not previously disclosed as experts, plaintiff is not offering Dr. Chen as an expert witness, but rather as percipient witnesses with personal knowledge relevant to this case. Defendants' motion to exclude Dr. Chen's testimony is, therefore, **DENIED** without prejudice to renewal at trial. The Court also **DENIES** without prejudice defendants' motion to the extent it seeks to exclude all evidence of plaintiff's medical records and plaintiff's testimony regarding his medical condition following his December 2010 injury. Such evidence is not properly excluded as irrelevant, even if—as defendants aver—the investigating and arresting officers "were not aware of any such records and did not have a legal obligation to review the records." As with Dr. Chen's percipient

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL 'O'

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|---|---|---|---|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

witness testimony regarding plaintiff's medical condition, plaintiff's testimony regarding his own medical condition (and, potentially, his medical records) may be probative of the facts underlying the officers' probable cause determination.

Accordingly, defendants' third motion *in limine* is **DENIED**, without prejudice, in its entirety.

> **5.     Defendants' MIL No. 5 to Exclude Evidence and Argument by Plaintiff regarding the Failure to Conduct Scientific Testing and Failure to Preserve Evidence**

In their fifth motion *in limine*, brought pursuant to Federal Rules of Evidence 402 and 403, defendants seek an order precluding plaintiff from introducing evidence indicating (1) that LAPD failed to conduct certain scientific testing; (2) that scientific testing would have exonerated plaintiff early in the investigation; (3) that no scientific evidence linked plaintiff to the murder; and (4) that bicycles purportedly left behind at the scene of the murder by the shooter and a gang member were not fingerprinted and were ultimately destroyed by LAPD. In opposition to defendants' motion, plaintiff argues because the totality of circumstances determines the existence of probable cause, evidence that tends to *negate* the possibility that a suspect has committed a crime is relevant to whether the officer has probable cause.

Because a persistent issue in this case is the question of what constitutes relevant and admissible evidence for the purpose of establishing plaintiff's unlawful arrest claim, the Court first provides background on the subject.

In the Ninth Circuit, an officer has probable cause to make a warrantless arrest when he has "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." Torres v. City of Los Angeles, 548 F.3d 1197, 1206 (9th Cir. 2008). "Probable cause is an objective standard and the officer's subjective intent in exercising his discretion to arrest is immaterial in judging whether his actions were reasonable for Fourth Amendment purposes." John v. City of El Monte, 505 F.3d 907, 911 (9th Cir. 2007). Furthermore, probable cause does not require conclusive evidence of guilt, but only "some objective evidence which would allow a reasonable officer to deduce that a particular individual has committed or is in the process of committing a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|---|---|---|---|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

criminal offense." McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984).  That is, "[n]either certainty, nor proof beyond a reasonable doubt, is required for probable cause to arrest."  United States v. Harvey, 3 F.3d 1294, 1296 (9th Cir. 1993).  Rather, "courts look to the totality of the circumstances known to the officers in determining whether there is probable cause for an arrest."  United States v. Sandoval-Venegas, 292 F.3d 1101, 1105 (9th Cir. 2002).

"As a corollary . . . of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also ***may not disregard facts tending to dissipate probable cause***."  United States v. Lopez, 482 F.3d 1067, 1073 (9th Cir. 2007) (internal quotation omitted) (emphasis added); Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009) (in determining probable cause, officers may not disregard facts tending to dissipate probable cause); see also Radvansky v. City of Olmsted Falls, 395 F.3d 291, 305 (6th Cir. 2005) ("Police officers may not . . . simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone.") (internal quotation marks omitted); BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of the arrest.  Reasonable avenues of investigation must be pursued especially when . . . it is unclear whether a crime had even taken place.").

Thus, while "[a]n officer need not conduct a 'mini-trial' before making an arrest, . . . probable cause does not exist when 'minimal further investigation' would have exonerated the suspect."  Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999) (internal citations omitted); see also Broam v. Bogan, 320 F.3d 1023, 1032 (9th Cir. 2003) ("An officer is not entitled to a qualified immunity defense, however, where exculpatory evidence is ignored that would negate a finding of probable cause.") (citing Kuehl, 173 F.3d at 651).  However, "[o]nce probable cause to arrest someone is established, . . . a law enforcement officer is not 'required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.' "  Bogan, 320 F.3d at 1032 (quoting Baker v. McCollan, 443 U.S. 137, 145-46 (1979)).

Ultimately, the existence of probable cause is a question of fact to be resolved by the jury.  See Harper v. City of Los Angeles, 533 F.3d 1010, 1022 (9th Cir. 2008).  In denying summary judgment as to plaintiff's unlawful arrest claim, the Court previously

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|---|---|---|---|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

explained that under Galvan's version of the disputed facts—i.e., where "defendants continued to pursue and arrest Galvan based on testimony that had been coerced from a vulnerable, unrealiable witness, despite [the existence] of additional evidence that rendered that witness's testimony unlikely if not impossible—a reasonable jury could conclude that defendants did not have probable cause to arrest Galvan, in violation of Galvan's clearly established right to be free from arrest without probable cause."  Dkt. 68 (Summary Judgment Order), at 21.

As is relevant here, plaintiff argues that the jury must "analyze the weight of all the evidence – not merely the sufficiency of the incriminating evidence – in determining whether [d]efendants had probable cause to arrest [p]laintiff for murder."  Dkt. 98, at 6. In plaintiff's view, "[t]he fact that no scientific evidence – whether by DNA or fingerprints on the bicycles or on the bullet extracted from [murder victim Gutierrez] – linked [p]laintiff to the murder is absolutely probative of whether [d]efendants could have reasonably believed they had probable cause to arrest [p]laintiff."  Id.  "More importantly," plaintiff argues, although plaintiff is not "required" to introduce scientific evidence or the absence thereof, the lack of any such requirement does not *preclude* plaintiff from introducing such evidence to establish a lack of probable cause.

For purposes of the instant motion, the Court agrees with plaintiff that the existence of facts indicating a *lack* of particular evidence—for example, the lack of plaintiff's fingerprints on the bikes or, more generally, the lack of any scientific evidence linking plaintiff to the murder—may be probative of the reasonableness of the officers' probable cause determination.

Accordingly, defendants fifth motion *in limine* is **DENIED** without prejudice to renewal at trial.

### 6.    Defendants' MIL No. 6 to Preclude the Testimony of Deputy Public Defender Ania Haigwood

Deputy Public Defender Ania Haigwood was plaintiff's criminal defense attorney in the 2012 murder trial of Joey Gutierrez.  Ms. Haigwood was deposed by defense counsel on July 17, 2015.  Pessis Decl., Ex. A and B.  Thereafter, on July 21, 2015, plaintiff served his supplemental disclosures, wherein he stated that Ms. Haigwood "has provided sworn testimony on a variety of issues including but not limited to those issues

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|----------|-------------------------|------|----------------|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

going to [d]efendants' concealment of evidence, destruction of evidence, suborning perjury, falsification of claims and malicious intent." Dkt. 79, at 2. According to defendants, plaintiff's supplemental disclosures "clearly provide [that plaintiff] intended to introduce Ms. Haigwood's testimony to support the <u>Brady</u> and malicious prosecution claims," which are no longer proceeding to trial. <u>Id.</u>

Accordingly, defendants now move to preclude Deputy Public Defender Haigwood from offering any testimony in this case. Defendants contend that Haigwood has no percipient knowledge of LAPD's investigation concerning Joey Gutierrez's murder, and therefore cannot testify as to the defendant officers' interactions with witnesses or as to their state of mind when they concluded there was probable cause to arrest plaintiff. Furthermore, to the extent plaintiff is offering Haigwood to testify regarding the types of investigative tactics used by the offices (i.e. interviews, review of hospital surveillance video, and request for ballistic testing), defendants aver that any such testimony is cumulative of the officers' testimony. Likewise, to the extent plaintiff wishes to call Haigwood to "impeach" either one or both of the defendant officers, defendants aver that plaintiff's proffer lacks foundation.

Plaintiff responds that Haigwood and the Office of the Public Defender of the County of Los Angeles "became a *de facto investigator* into the murder of Joey Gutierrez." Dkt. 107, at 1. Specifically, plaintiff asserts the following:

> [It is] Ms. Haigwood – not Defendants – [who] initiated the investigation into Plaintiff's alibi and tracked down the physician who performed surgery on Plaintiff's foot less than two months before the murder. She – not Defendants – tracked down the purported gang member with the moniker "Insane", and learned that "Insane" was actually behind bars at the time of the shooting. Ms. Haigwood also tracked down Innocente Hernandez and followed up on the evidence by eyewitness Jurado that the suspected shooter may have been in a car accident at the same intersection where the murder took place only days after the shooting. Defendants, who had this evidence long before Ms. Haigwood had it, did nothing with it. The list goes on.

<u>Id.</u> at 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|----------|-------------------------|------|----------------|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

The Court finds plaintiff's arguments to be unavailing.  To the extent plaintiff's former attorney previously identified, in the context of the criminal case, an "abundance of holes in the [d]efendants' investigation and theory of the case," it is unclear why plaintiff's current counsel cannot present admissible evidence of these purported "holes" and thereby undermine defendants' finding of probable cause in lieu of placing plaintiff's former attorney on the stand.  It is simply irrelevant that Ms. Haigwood "tracked down Dr. Chen and discovered the medical evidence supporting the fundamental conclusion contradicting probable cause in this case," as Dr. Chen himself is slated to testify at trial.  The Court rejects plaintiff's assertion that because Haigwood, in her defense of Galvan, "filled the many gaps in [d]efendants' investigation with her own searching inquiries," she therefore "has substantial percipient knowledge about [d]efendants' investigation, and the foundation to testify as to its insufficiencies."  Id. at 1-2.

Accordingly, defendants' sixth motion *in limine* to preclude the testimony of Deputy Public Defender Ania Haigwood is **GRANTED**.

### 7.    Defendants' MIL No. 7 to Preclude or, in the Alternative, Limit the Testimony of Plaintiff's Police Practices Expert

Defendants move to exclude the testimony of plaintiff's police practices expert, Timothy Williams, in its entirety.  In the alternative, defendants move to preclude Williams from, *inter alia*, (1) referencing the 2012 criminal action filed against plaintiff, or (2) offering opinions suggesting that the LAPD and/or its officers failed (a) to properly photograph the crime scene; (b) to conduct certain forms of scientific testing; (c) to investigate a particular individual, "Flaco," as the murder suspect; or (d) to prepare a "detailed and concise written description" of the crime scene in the related Murder Book Chronology.  Defendants argue that "[a]lthough Mr. Williams is a retired LAPD Detective, the majority of his 'opinions' appear to be nothing more than irrelevant and inflammatory statements" or improper legal conclusions.  Dkt. 81, at 6.

Federal Rule of Evidence 702 provides that an expert may testify "in the form of an opinion or otherwise" if his or her "specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue."  In Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993), the Supreme Court, in addressing admissibility of "scientific expert evidence," held that FRE 702 imposes a "gatekeeping" obligation on the trial judge to "ensure that any and all scientific testimony ... is not only relevant, but

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | | Date | August 1, 2016 |
|---|---|---|---|---|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | | |

reliable." In <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999), the Supreme Court "clarified that the gatekeeping function is not limited to 'scientific' expert testimony, but applies to all expert testimony." <u>United States v. Hankey</u>, 203 F.3d 1160, 1167 (9th Cir. 2000). However, "[t]he <u>Daubert</u> factors were not intended to be exhaustive nor to apply in every case." <u>Id.</u> at 1168 ("[F]ar from requiring trial judges to mechanically apply the <u>Daubert</u> factors-or something like them-to both scientific and non-scientific testimony, <u>Khumo Tire</u>, heavily emphasizes that judges are entitled to broad discretion when discharging their gatekeeping function.") (citation omitted). Further, admissibility of expert opinion generally turns on preliminary questions of law determined by the trial judge, including *inter alia*, whether the testimony is relevant and reliable, and whether its probative value is substantially outweighed by risk of unfair prejudice, confusion of issues, or undue consumption of time. <u>Id.</u>

Plaintiff's police practices expert, Timothy Williams, is a retired LAPD Senior Detective Supervisor. Dkt. 108-2 (Expert Report). According to his expert report, Williams served with the LAPD for twenty-nine years and five months, twenty-six years of which were dedicated to criminal and administrative investigations. <u>Id.</u> Specifically, Williams avers that he was a detective and detective supervisor in various investigative assignments, including Robbery, Homicide, Crimes Against Persons, Burglary, Juvenile, Auto Theft, Child Abuse, Sexual Assault, Domestic Violence, and Narcotics. <u>Id.</u> Here, defendants' contend that Williams' testimony either (1) offers legal conclusions and therefore usurps the province of the jury, or (2) is irrelevant to the remaining claims in this case—i.e., claims for unlawful arrest (against Terrazas and Nunn), failure to intervene (against Nunn), and <u>Monell</u> liability for the City's failure to discipline the officers based upon their purported pattern of misconduct over the years.

Under Federal Rule of Evidence 704(a), "[a]n opinion is not objectionable just because it embraces an ultimate issue" in the case. However, "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." <u>Hangarter v. Provident Life & Acc. Ins. Co.</u>, 373 F.3d 998, 1016 (9th Cir. 2004) (emphasis in original) (citation omitted). "In the specific context of probable cause, this generally means that [the expert] may testify ***on any underlying facts that may be relevant to a probable cause determination***, but he may not testify that probable cause did or did not in fact exist." <u>Quinn v. Fresno Cty. Sheriff</u>, No. 1:10-CV-01617 LJO, 2012 WL 2995477, at *4 (E.D. Cal. July 23, 2012) (emphasis added); <u>cf. Torres v. City of Los Angeles</u>, 548 F.3d 1197, 1214 n.11 (9th Cir. 2008) (holding that the district court abused

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|----------|-------------------------|------|----------------|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

its discretion when it denied a motion *in limine* seeking to preclude witnesses from testifying as to whether there was probable cause for an arrest); Stuart v. United States, 23 F.3d 1483, 1487 (9th Cir. 1994) (upholding district court's ruling that barred plaintiff's expert from opining as to whether probable cause existed on the ground that the jury was more suited than the expert to answer the question).

Here, despite defendants' contention to the contrary, Williams does not offer improper legal conclusions regarding any of plaintiff's claims (e.g., whether there was probable cause to arrest Galvan), and accordingly Williams's opinions cannot be excluded on these grounds. Cf. Burdett v. Reynoso, No. C-06-00720 JCS, 2007 WL 4554034, at *1 (N.D. Cal. Nov. 20, 2007) (holding that "police practices experts may not testify as to (1) the law; (2) probable cause or reasonable suspicion to arrest or to detain; (3) whether Defendants or the San Francisco Police Department policies are in compliance with the law; or (4) whether any particular conduct violated any particular law or right"); Burkhart v. Wash. Metro. Area Transit Auth., 112 F.3d 1207, 1212-13 (D.C. Cir. 1997) ("[A]n expert may offer his opinion as to the facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied.").

Defendants also seek to preclude Williams from making certain specific assertions including, *inter alia*, stating (1) that ballistics "evidence" at the crime scene should have been photographed and numbered; (2) that a trajectory analysis should have been performed; (3) that a gunshot residue ("GSR") analysis should have been performed on the victims' clothing; (4) that the defendant officers should have corroborated plaintiff's alibi; (5) that the defendant officers failed sufficiently investigate another suspect, "Flaco,"; and (6) that "crime scene documentation was not done." However, the Court declines to parse the assertions made in Williams's expert report in the manner in which defendants propose. Many of defendants objections speak to the weight that should be accorded to certain assertions in Williams's report, not their admissibility, and therefore are more appropriately the subject of cross-examination. See Freeland v. Irridium World Commc'ns., Ltd., 545 F. Supp. 2d 59, 88 (D.D.C. Apr. 3, 2008) ("Motorolla may cross-examine Saunders about the factual basis of his opinions, but its disagreements with that factual basis does not affect the testimony's admissibility."). Of course, Williams's testimony must comport with the Court's additional rulings here and any additional determinations made at trial; in particular, the Court's conclusion that evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

regarding plaintiff's prior criminal trial and acquittal is irrelevant to the determination of probable cause.

Accordingly, defendants' seventh motion *in limine* is **DENIED**.

**B.   Plaintiff's Motions *in Limine***

**1.   Plaintiff's MIL No. 1 to Preclude Uncorroborated Hearsay "Nod" Defendants Allege Constitutes "Gang Evidence"**

In his first motion *in limine*, plaintiff seeks an order precluding defendants from offering any testimony or documentary evidence concerning "an uncorroborated nod" that plaintiff allegedly gave to (non-defendant) LAPD Officer Garcia.  According to plaintiff, defendants Terrazas and Nunn claim in reports that Officer Garcia told them that plaintiff nodded in affirmation when Garcia asked plaintiff whether he belonged to a gang.  Plaintiff contends that any conversation between Garcia and the officer defendants regarding plaintiff's alleged "nod" is properly excluded as inadmissible hearsay, as is any reference to the "nod" in the Murder Book Chronology or similar reports.  Defendants contend that "[w]hether [p]laintiff actually is or was a gang member at the time of the incident appears to be relevant," as is the defendants' knowledge of any alleged gang affiliation.   Dkt. 101, at 1.  Defendants do not respond to the argument that accounts of plaintiff's alleged "nod" are being offered for the truth of the matters asserted—i.e., affirmation of gang affiliation—and therefore constitute inadmissible hearsay.

Again, plaintiff purportedly made a statement—a "nod" affirming gang membership—to Officer Garcia, who *then told defendants* that plaintiff admitted to being in a gang.[7]  While personal observations of an investigating officer that are

---

[7]  Defendants wrongfully assert that a "nod" is merely a "gesture" and therefore cannot properly be understood as a "statement."  In reality, "a 'nod' is a statement for purposes of the hearsay rule and will be held to constitute hearsay if introduced to prove the truth of the matter asserted (i.e., a positive or negative answer in response to a particular question."  United States v. Katsougrakis, 715 F.2d 769, 774 n.14 (2d Cir. 1983); see also Wachner v. Aramark Educ. Servs., Inc., No. CV 02-528-BR, 2004 WL 1379566, at *5 (D. Or. Jan. 3, 2004) ("The nonverbal statement, "*He nodded in the*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|---|---|---|---|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

memorialized in his or her own report may be admissible under Federal Rule of Evidence
803(8), "statements attributed to other persons are clearly hearsay, and inadmissible
under the common law exception to the hearsay rule." Colvin v. U.S., 479 F.2d 998,
1003 (9th Cir. 1973).

> [T]o be admissible under Rule 803(8), an investigative report
> must generally be based on the observations and knowledge of
> the person who prepared the report. Statements by third
> persons that are recorded in an investigative report are hearsay
> within hearsay. As such, they are inadmissible unless they
> qualify for their own exclusion or exception from the rule
> against hearsay, e.g., as party admissions or as qualifying under
> some other hearsay exception.

5 Weinstein's Federal Evidence § 803.10[4][a] (2015).

Here, therefore, to the extent any officers other than Officer Garcia recount
plaintiff's alleged gesture in any written report, any such recounting of the gesture
constitutes inadmissible hearsay within hearsay. Similarly, testimony from Terrazas or
Nunn regarding Garcia's recounting of plaintiff's alleged gesture constitutes hearsay
within hearsay. Finally, even if the alleged gesture itself may properly be admitted as an
admission of a party opponent or otherwise offered only to demonstrate its effect on the
listener, the Court would nonetheless exclude evidence of plaintiff's gesture (or Garcia's
recounting of the gesture) on the grounds that it is not relevant to plaintiff's unlawful
arrest claim—as plaintiff notes, the gesture was allegedly made *after* plaintiff had already
been arrested and therefore could not have informed the decision to arrest.

Accordingly, the Court concludes that any evidence of plaintiff's alleged gesture or
affirmation of any gang affiliation is properly excluded. Plaintiff's first motion *in limine*
is therefore **GRANTED**.

---

*affirmative*," is hearsay and, [is] therefore, inadmissible . . . .") (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|---|---|---|---|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

### 2.   Plaintiff's MIL No. 2 to Exclude Improper Expert Testimony

In his second motion *in limine*, plaintiff moves to exclude certain opinions and testimony of defendants' police practices expert, Michael Bumcrot, regarding the date on which defendant Terrazas made an entry into the Murder Book Chronology concerning a purported phone call between him and an eyewitness, Ernesto Jurado.  As is relevant to the instant motion, Mr. Bumcrot states the following in his report:

> I reviewed Detective Terrazas' phone records and noted that witness Jurado had telephone contact with Detective Terrazas on February 13, 2011.  Detective Terrazas has stated that when witness Jurado called him to state the suspect was observed limping away, he (Terrazas) was at home.  A check of the 2011 calendar reveals that February 13, 2011, was a Sunday, a regular day off for most detectives.  This suggests that witness Jurado and Detective Terrazas talked on the telephone on February 13, 2011 and the entry into the chronology was the next day, February 14th.

Chun Decl., Exhibit B (Bumcrot Report) at 16.

Defendants contend that Bumcrot "discovered" that February 13, 2011 was a Sunday; accordingly, defendants aver that "[b]ased on his vast experience as a homicide detective, it [is] appropriate for [Bumcrot] to state in his report that a Sunday is 'a regular day off for most detectives,' " and to "conclude[] that the call was documented in the chronological record on February 14, 2011, which was the following day."  Dkt. 103, at 2.

Plaintiff avers that the actual date of the entry "is key to the credibility of [d]efendant Terrazas, who was caught in a lie at the criminal trial concerning said entry."  Dkt. 86, at 3.  Plaintiff avers in his motion that defendants now improperly seek to have their expert "corroborate Terrazas' lie[] by testifying that in his opinion, the false entry has to be the truth," and thereby make an improper credibility determination meant only to be made by the jury.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|---|---|---|---|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

The Court agrees with plaintiff.  Any determination regarding Terrazas's credibility is a jury question, as is any factual determination regarding the true date of both Jurado's phone call and Terrazas's entry in the Murder Book Chronology.  Here, defendants appear to be offering expert testimony in an attempt to bolster Terrazas's credibility and thereby usurp the role of the jury in making its credibility determination.  Furthermore, Bumcot's assertion that February 13, 2011 "was a Sunday" and "a regular day off for most detectives" is irrelevant to the question of whether the substance of Terrazas's entry—which states that Jurado "phoned" Terrazas on Monday, February 14, 2011—is false.  Finally, even if any such testimony was relevant, it is unclear what "scientific, technical, or other specialized knowledge" Bumcrot brings to bear that "will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).

Accordingly, plaintiff's third motion *in limine* is **GRANTED**.

### 3.     Plaintiff's MIL No. 3 to Exclude Evidence that Plaintiff Refused to Take a Polygraph Examination

In his third motion *in limine*, plaintiff seeks an order precluding all evidence of plaintiff's alleged refusal to take a polygraph examination.[8]  Dkt. 87.  Defendants filed a notice of non-opposition to plaintiff's third motion *in limine*.  Dkt. 104.

Accordingly, plaintiff's third motion *in limine* to exclude evidence regarding plaintiff's refusal to take a polygraph examination is **GRANTED**.

### 4.     Plaintiff's MIL No. 4 to Exclude Evidence Regarding Plaintiff's Criminal History

In this fourth motion *in limine*, plaintiff moves preclude defendants from offering any evidence regarding plaintiff's criminal record, as a minor or otherwise.  Plaintiff contends that such evidence is inadmissible pursuant to Federal Rules of Evidence 609 (regarding impeachment by evidence of a criminal conviction), 402, and 403.  According

---

[8]   During plaintiff's interrogation, plaintiff allegedly made the statement, "I ain't taking shit.  I have nothing to say, just book me."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|----------|--------------------------|------|----------------|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

to plaintiff, his only prior arrests took place when he was a juvenile, were for minor vandalism associated with graffiti, and were completely unrelated to the pursuits of any street gangs. However, plaintiff states that during the parties' meet-and-confer on the motions *in limine*, counsel for defendants indicated she will seek to introduce evidence of plaintiffs' "prior run-ins" with police in order to establish "bias." Dkt. 88, at 6. Plaintiff further avers that he has no adult criminal convictions, and that absent his juvenile history, plaintiff and his counsel are "completely unaware" of the prior run-ins of which defendants speak.

Federal Rule of Evidence 609(d) provides "that evidence of prior *juvenile adjudications* is generally inadmissible to attack the credibility of a witness, except under certain conditions in a criminal case."[9] Powell v. Levit, 640 F.2d 239, 241 (9th Cir. 1981) (emphasis added). In any event, defendants assert that they "do not intend to affirmatively introduce evidence [of plaintiff's] juvenile criminal history." Dkt. 105, at 3. Accordingly, as defendants appear to concede, to the extent plaintiff's vandalism arrest resulted in any juvenile adjudication, evidence of any such juvenile adjudication is inadmissible in this action. See id.

---

[9] Rule 609(d) reads, in relevant part, as follows:

(d)     Juvenile Adjudications. Evidence of a juvenile adjudication is admissible under this rule only if:

(1)     it is offered in a criminal case;

(2)     the adjudication was of a witness other than the defendant;

(3)     an adult's conviction for that offense would be admissible to attack the adult's credibility; and

(4)     admitting the evidence is necessary to fairly determine guilt or innocence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|---|---|---|---|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

However, defendants argue that because "[p]laintiff's credibility is at issue in this case, whether he is biased against the LAPD is relevant to the jury's determination of the probable cause issue." Dkt. 105, at 3.  Without pointing to any specific incident or arrest—or even asserting that any such arrest exists—defendants contend that evidence of any prior arrest with the LAPD is admissible to demonstrate bias, for purposes of impeachment, and in order to assess damages.  As plaintiff rightly notes, however, to the extent defendants seek to introduce evidence of interactions with police outside of plaintiff's documented juvenile record, they have not disclosed any such evidence in discovery.  Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*." Fed. R. Civ. P. 37(c)(1) (emphasis added).  Therefore, to the extent defendants *do* attempt at trial to offer previously undisclosed evidence of plaintiff's adult criminal history, defendants will be tasked, pursuant to Federal Rule of Civil Procedure 37(c)(1), with demonstrating that their failure to disclose such evidence "was substantially justified or is harmless."  Although defendants have indicated that they do not intend to offer evidence of plaintiff's juvenile arrest for purposes of demonstrating bias or for impeachment, the Court GRANTS plaintiff's motion to exclude evidence of the juvenile arrest on the grounds that any probative value is substantially outweighed by the risk of unfair prejudice.  See Green v. Baca, 226 F.R.D. 624, 657-58 (C.D. Cal. 2005) (Morrow, J.) (prior bookings by the Los Angeles County Sheriff's Department were inadmissible to prove bias and "any probative value that such evidence might have (to show bias) is substantially outweighed by the danger of undue prejudice that would result from its admission.").

Accordingly, plaintiff's motion *in limine* in **GRANTED** in part and **DENIED** in part.  Specifically, defendants are precluded from introducing any evidence of plaintiff's juvenile criminal history, including any arrest or juvenile adjudication.  Plaintiff's motion is denied, however, to the extent it seeks to exclude all previously-undisclosed evidence of plaintiff's adult criminal history; but to the extent any such evidence exists and may otherwise be admissible, defendants face a high bar in demonstrating that their failure to disclose such evidence "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     **'O'**

| Case No. | 2:14-cv-00495-CAS(AJWx) | Date | August 1, 2016 |
|---|---|---|---|
| Title | ROY GALVAN V. CITY OF LOS ANGELES, ET AL. | | |

## IV. CONCLUSION

In accordance with the foregoing:

Defendants' MIL No. 1 is **GRANTED** in part and **DENIED** in part.

Defendants' MIL No. 2 is **GRANTED** in part and **DENIED** in part.

Defendants' MIL No. 3 is **GRANTED** in part and **DENIED** in part.

Defendants' MIL No. 4 is **DENIED**.

Defendants' MIL No. 5 is **DENIED**.

Defendants' MIL No. 6 is **GRANTED**.

Defendants' MIL No. 7 is **DENIED**.

Plaintiff's MIL No. 1 is **GRANTED**.

Plaintiff's MIL No. 2 is **GRANTED**.

Plaintiff's MIL No. 3 is **GRANTED**.

Plaintiff's MIL No. 4 is **GRANTED** in part and **DENIED** in part.

IT IS SO ORDERED.

| | 00 | : | 50 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |